52 F.3d 329
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
$10,000.00 IN UNITED STATES FUNDS, Defendant.
Appeal of John E. ARNOLD and Teresa A. Arnold, Claimants/Appellants.
 No. 94-2637.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 1, 1995.*
Decided April 11, 1995.
 
 Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The claimants, John and Teresa Arnold, appeal the district court's denial of their motion to set aside a default judgment entered against them. The principal issue before us is whether the district court abused its discretion when it refused to set aside the default judgment in order to allow the claimants an opportunity to file a verified claim. Because the district court did not abuse its discretion, we affirm.
 
 BACKGROUND
 
 2
 On September 16, 1993, pursuant to a seizure warrant issued by a federal magistrate judge, the Federal Bureau of Investigation ("FBI") made the initial seizure of the $10,000 that is the subject matter of this action. On January 12, 1994, the government filed a verified civil forfeiture complaint and affidavit under 18 U.S.C. Secs. 981(a)(1)(A) and 981(a)(1)(C) for $10,000 in United States funds, which allegedly represented the cash redemption value of a country club membership purchased originally for $15,000 by John E. Arnold. The affidavit contained the sworn testimony of the FBI Special Agent responsible for investigating the fraud schemes of Arnold. The affidavit asserted that Arnold had defrauded investors through various investment schemes, and that the $15,000 used to purchase the country club membership represented proceeds of the fraud.[1]
 
 
 3
 The funds were served with a warrant of arrest on January 13, 1994. On January 22, 1994, Arnold was served, and on February 18, 1994, Teresa Arnold, his wife, was served. On February 14, 1994, the Arnolds filed an unverified answer and counterclaim and an entry of appearance, but no other pleadings. On March 28, 1994, the government moved to strike the Arnolds' pleadings and for a judgment by default because the Arnolds had not filed a verified claim in accordance with Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.[2] Rule C(6) requires that a claimant in a forfeiture proceeding file a sworn notice of claim within 10 days after service of the complaint and an answer within 20 days after the filing of the notice of the claim.[3] The government also urged that the Arnolds' counterclaim be dismissed on a number of grounds, including their failure to allege any jurisdiction for the counterclaim. In its attached Memorandum of Law, the government further argued under United States v. One (1) Mercedes 450SE, 651 F.Supp. 351, 353 (S.D.Fla.1987), that the Arnolds not be permitted to file a late verified claim. The Arnolds did not file a responsive brief to the government's motion within ten days, as required under Rule 5 of the Local Rules for the United States District Court for the Southern District of Illinois,[4] nor did they request an extension of time to file an amended claim.
 
 
 4
 On April 15, 1994, the court granted the government's motion to strike, reasoning that the Arnolds failed to file a properly verified and timely claim. The court also ruled that the Arnolds would not be allowed to file a late verified claim; entered a default judgment for the government; and ordered the $10,000 funds forfeited to the government. United States v. $10,000.00 in United States Funds, 863 F.Supp. 812, 816-17 (S.D.Ill.1994).
 
 
 5
 On May 3, 1994, the Arnolds filed a "Motion for a New Trial" under Rule 59(a), stating that they had filed an "Answer and claim" but "omitted to file a verified claim." Their motion asserted that the district court's April 15, 1994 order was entered before they could "request[ ] leave of court to amend their pleadings and file a verified claim as required by law." The motion also asserted that the Arnolds' attorney had advised the U.S. Attorney's office on April 5, 1994 that "he was attempting to retain local counsel to assist him in the handling of this claim." As relief, the motion requested that the court "open the judgment, set aside the default and forfeiture and permit said petitioners to file a verified claim." In an accompanying memorandum supporting their "Motion for a New Trial," the Arnolds asserted that the government would not be prejudiced if they were given leave to amend the pleadings.
 
 
 6
 On June 9, 1994, the district court denied the Arnolds' motion. On June 15, 1994, the government filed a Motion for Judgment and Decree for Forfeiture, which the district judge signed on July 1, 1994. The court directed that the forfeited funds be disbursed according to the restitution provisions contained in the amended judgment entered in John Arnold's criminal case. These provisions specified that Arnold would make payment to various persons and entities that had been victimized by his fraud. United States v. Arnold, No. 92-30024-01-WLB (S.D.Ill. Oct. 27, 1992) (Amended Judgment).
 
 
 7
 On July 8, 1994, the Arnolds filed their notice of appeal.
 
 DISCUSSION
 
 8
 On appeal, the Arnolds assert that the sole issue in dispute is whether the district court abused its discretion when it refused to permit them "to amend their claim by adding the necessary verification." (Claimants' Br. at 5.) By framing the issue in this manner, the Arnolds suggest that they seek to challenge only the district court's June 9, 1994 denial of their motion to set aside the default judgment.[5] The ruling which the Arnolds in fact contest, however, is the court's April 15, 1994 default judgment order prohibiting them from filing an amended claim. In that default judgment order, the court analyzed the several factors set forth in United States v. One (1) 1979 Mercedes 450 SE, 651 F.Supp. 351, 353 (S.D.Fla.1987), that have guided courts in determining whether to grant a discretionary extension of time for the filing of a verified claim. The district court here concluded that it was "unaware of any reason whatsoever" why the Arnolds failed to file a timely claim, and held that the Arnolds should not be permitted to file a late verified claim. $10,000.00 in United States Funds, 863 F.Supp. at 815. Because the Arnolds appealed from the denial of their motion to set aside the default judgment, they may not challenge the underlying default judgment. The issue before us therefore is not whether the trial court should have allowed the Arnolds to amend their claim, but rather, whether the district court abused its discretion in refusing to set aside the default judgment.
 
 
 9
 The Arnolds' appeal demonstrates "the often misunderstood relationship among default judgments, Federal Rule of Civil Procedure 60(b), and appellate review--a misunderstanding usually ... involving an unsuccessful attempt to secure review of a default judgment by appealing the denial of a motion to vacate judgment." Jones v. Phipps, 39 F.3d 158, 161 (7th Cir.1994). The Arnolds chose to ask the district court to set aside the April 15, 1994 default judgment (as permitted under Rule 60(b)(1)) rather than appealing the judgment. They did not file a notice of appeal of the judgment itself within the allotted sixty day period after entry of the default judgment, Fed.R.App.P. 4(a)(1), but instead waited until the district court denied their motion to set aside the default judgment before filing a notice of appeal which stated only that they appealed from the district court order "denying Petitioner's [sic] Motion for a New Trial wherein they were seeking to set aside default and forfeiture as to permit said Petitioners to file a verified claim." (R. at 21.)
 
 
 10
 We have repeatedly held that Rule 60(b) motions permit review only of the denial of the request to set aside the default judgment; they do not contest the propriety of the underlying judgment itself. Jones, 39 F.3d at 161; Lee v. Village of River Forest, 936 F.2d 976, 979 (7th Cir.1991). Because the Arnolds waited more than sixty days from the entry of the default to file the notice of appeal and took no action which might have tolled the running of that time period, see, e.g., Fed.R.App.P. 4(a)(4)(F), the Arnolds forever lost the right to appeal the merits of the underlying default judgment. Furthermore, the Arnolds cannot challenge the propriety of the underlying default judgment merely by designating the denial of their Rule 60(b) motion as the order appealed from in a notice of appeal. Jones, 39 F.3d at 162 (citing Browder v. Director, Dep't of Corrections of Ill., 434 U.S. 257, 263 n. 7 (1978)). Unfortunately, the Arnolds have completely disregarded these distinctions and have proceeded directly to a discussion of the merits of the underlying judgment, and specifically, the district court's ruling that the Arnolds should not be allowed to file a late verified claim. Appellate review of the denial of a Rule 60(b) motion simply does not " 'reach the merits of the underlying judgment.' " Id. (quoting Soler v. Waite, 989 F.2d 251, 253 (7th Cir.1993)).
 
 
 11
 Our review of denials of relief under Rule 60(b)(1) is "exceedingly deferential" and is limited to determining whether the district court abused its discretion. Id. Parties seeking to set aside a default judgment must overcome "a high hurdle," showing "something more compelling than ordinary lapses of diligence or simply neglect." Id. A defaulted party seeking Rule 60(b)(1) relief must satisfy a three-part standard: (1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint. Id. The Arnolds do not address any of these factors in their appellate brief.
 
 I. Good Cause
 
 12
 The first hurdle which the Arnolds must overcome is demonstrating that they had good cause for the default. The Arnolds, however, have not shown any reason whatsoever for their failure to file the required verified claim. In their appellate brief, the Arnolds note that they alerted the government that they "would attempt to retain local counsel to continue the claim...." (Claimants' Br. at 4.) But this assertion does not excuse the Arnolds' failure to file a timely verified claim or explain why local counsel was even necessary at all. In any case, the Arnolds did have access to their attorney. As a general matter, a litigant fares better having some legal counsel rather than none, Jones, 39 F.3d at 163, even if counsel provides representation on matters unrelated to this case. The Arnolds' access to some legal counsel made their task of showing "good cause" for default or "excusable neglect" under Rule 60(b)(1) more difficult. Id. In sum, nothing in the record suggests that the Arnolds had good cause for failing to file a timely verified claim.
 
 II. Meritorious Defense
 
 13
 The Arnolds failed to clear the first hurdle of the three-part test when they did not show good cause for their default. Failure to show good cause alone is a sufficient basis to refuse to set aside the Arnolds' default. Pretzel & Stouffer v. Imperial Adjusters, 28 F.3d 42, 46 (7th Cir.1994). Thus even if the Arnolds could present a meritorious defense to the original complaint, the existence of such a defense would not require that the default judgment be set aside.
 
 
 14
 In any event, the Arnolds have not articulated a meritorious defense. A meritorious defense is one that raises a "serious question" about the propriety of a default judgment and "is supported by a developed legal and factual basis." Jones, 39 F.3d at 165. It requires more than a "general denial" and "bare legal conclusions." Pretzel & Stouffer, 28 F.3d at 46; see also Bieganek v. Taylor, 801 F.2d 879, 882 (7th Cir.1986) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make."); Rogers v. Allied Media (In re Rogers), 160 B.R. 249, 254 (Bankr.N.D.Ga.1993) ("While a mere denial may suffice in an answer, the defendant must go beyond a mere denial and present more evidence at this stage of the proceeding to justify setting aside the default.").
 
 
 15
 The only pleadings that could conceivably be construed as raising a meritorious defense are the Arnolds' answer and counterclaim, which were filed together in February 1994. The Arnolds' answer consisted solely of general denials and two affirmative defenses, while the counterclaim asserted that the funds claimed by the government were wrongfully seized by the FBI.[6] One of the exhibits attached to the answer and counterclaim was an unsworn handwritten statement of John Arnold asserting that the funds used to pay for membership in the country club were from the personal savings of him and his wife. However, all of the Arnolds' pleadings were stricken under the court's April 15, 1994 Memorandum and Order primarily because the Arnolds had failed to comply with the requirements for filing a claim and answer under Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.
 
 
 16
 The Arnolds did not present any evidence to support a defense to this action, and their answer and counterclaim contained only general denials and conclusory statements which are insufficient to demonstrate a meritorious defense. Because their assertions are not supported by any developed legal or factual basis, we conclude that the Arnolds have failed to establish a meritorious defense against the government's complaint. Compare Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir.1988) (trial court's denial of Rule 60(b) motion was abuse of discretion because court failed to consider defendant's defenses consisting of a verified answer, counterclaim, and relevant exhibits).
 
 III. Quick Action
 
 17
 We need not analyze the remaining requirement of whether or not the Arnolds' action to correct the default was "quick" enough. The Arnolds needed to fulfill all three requirements, and they failed to meet two. In light of these failures, the speed with which they may have acted to correct the default cannot alter the result. Pretzel & Stouffer, 28 F.3d at 46-47.[7]
 
 CONCLUSION
 
 18
 We conclude that the Arnolds did not satisfy the three-part test of Rule 60(b) and that the district court did not abuse its discretion in denying the motion to set aside the default order. Moreover, our jurisdiction over this appeal does not include matters relating to the underlying default judgment itself. Accordingly, we AFFIRM the decisions of the district court.
 
 
 
 *
 This case originally was set for argument on March 1, 1995. On February 28, 1995, Appellants moved to waive argument, and we granted their motion. See Fed.R.App.P. 34(a); Cir.R. 34(f). The appeal is submitted for decision on the briefs and record
 
 
 [1]
 Although it was not alleged in the forfeiture complaint, Arnold pled guilty in January 1992 to one count of mail fraud and was committed to the custody of the U.S. Bureau of Prisons for 27 months, to be followed by three years of supervised release. United States v. Arnold, No. 92-30024-01-WLB (S.D.Ill. Oct. 27, 1992) (Amended Judgment)
 
 
 [2]
 The Supplemental Rules for Certain Admiralty and Maritime Claims specifically apply to "the procedure in statutory condemnation proceedings analogous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not." Fed.R.Civ.P., Supp.Rule A. The Supplemental Rules apply to civil forfeiture actions under 21 U.S.C. Sec. 881. See United States v. U.S. Currency in Amount of $103,387.27, 863 F.2d 555, 558 n. 4 (7th Cir.1988)
 
 
 [3]
 Rule C(6) provides in relevant part:
 Claim and Answer; Interrogatories.
 The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed ... and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that the agent, bailee, or attorney is duly authorized to make the claim.
 
 
 [4]
 Local Rule 5(c), which addresses motions to strike and for judgment on the pleadings, provides in pertinent part:
 An adverse party shall have ten (10) days after the service of the movant's brief in which to serve and file an answering brief. Failure to timely file an answering brief to a motion may, in the Court's discretion, be considered an admission of the merits of the motion.
 
 
 [5]
 Puzzlingly, the Arnolds labeled their original motion challenging the default judgment as "Motion for New Trial" under Federal Rule of Civil Procedure 59(a). Because there never was a trial in this matter, the Arnolds could not be seeking a new trial. The relief which they apparently sought was the setting aside of the default judgment. Their May 3, 1994 motion was functionally a Rule 55(c) motion, regardless of its label. Under Rule 55(c), a judgment of default may be set aside in accordance with the reasons listed in Rule 60(b) (e.g., mistake, inadvertence, excusable neglect)
 
 
 [6]
 The counterclaim asserts that the seizure of the $10,000 was unlawful because (1) the funds represented a joint membership (tenancy by the entirety) of both Arnolds in the country club, and thus were not subject to seizure by the government; (2) the funds were not the product of wrongful acts of John Arnold; and (3) Teresa Arnold had no knowledge of her husband's unlawful acts and was an innocent victim of the wrongful taking of her money
 
 
 [7]
 We note, however, that the "quick action" prong is one factor which the Arnolds probably can satisfy. The Arnolds promptly filed their Motion for a New Trial on May 3, 1994, less than three weeks after Judge Stiehl entered his Memorandum and Order on April 15, 1994. Compare Jones, 39 F.3d at 165 (filing motion to set aside default more than four weeks after its entry did not constitute "quick action"). Contrary to the government's suggestion in its brief, the "quick action" prong focuses not on a litigant's actions before the entry of default, (Gov't Br. at 13.), but rather on the time elapsing between entry of judgment and the motion to vacate. Jones, 39 F.3d at 165